IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| CARL STARR, §<br>　§<br>　Plaintiff, §<br>　§<br>v. §　　EP-09-CV-353-KC<br>　§<br>COUNTY OF EL PASO, TEXAS, and §<br>TEXAS ATTORNEY GENERAL §<br>GREG ABBOTT, §<br>　§<br>　Defendants. § | |

## ORDER

On this day, the Court considered Defendant County of El Paso's ("the County") Re-Urged Motion to Dismiss ("County's Motion") (Doc. No. 27) and Defendant Texas Attorney General Greg Abbott's ("Abbott") Motion to Dismiss ("Abbott's Motion") (Doc. No. 34). Upon due consideration, the motions are **GRANTED**.

I.   **BACKGROUND**

Plaintiff Carl Starr ("Starr") is a resident of El Paso County, Texas. Pl.'s First Am. Civil Rights Compl. ¶ 4 ("Compl.") (Doc. No. 30). Starr claims that Defendants have violated his First and Fourteenth Amendment rights by enacting and/or adopting laws that penalize individuals who file ethics complaints which the County deems to be frivolous or filed in bad faith. *See* Compl. ¶¶ 8-11. Specifically, Starr challenges the constitutionality of sections 161.173 and 161.205 of the Texas Local Government Code, both of which regulate local ethics commissions and the filing of county ethics complaints, and the County ordinances which

allegedly enact those sections of the code.[1]  *Id.* ¶¶ 8-9 (citing TEX. LOC. GOV'T CODE §§ 161.173, 161.205).  According to Starr, the laws are overbroad and/or vague, and they have unconstitutionally chilled his speech.  *Id.* ¶¶ 7, 11.

Section 161.173 of the Texas Local Government Code designates "a sworn complaint . . . and any additional evidence relating to the processing, preliminary review . . . or resolution of a sworn complaint" as confidential.  TEX. LOC. GOV'T CODE § 161.173(a).  A "person [who] distributes information considered confidential" or "knowingly uses the confidential information for a purpose other than the purpose for which the information was received" or "discloses the confidential information to a person who is not authorized to receive the information" commits a "misdemeanor punishable by (1) a fine of not more than $1,000; (2) confinement in the county jail for not more than six months; or (3) both the fine and confinement."  *Id.* §§ 161.173(f)-(h).

Section 161.205 of the Texas Local Government Code establishes that "the commission may impose a civil penalty of not more than $4,000 for the filing of a frivolous or bad-faith complaint."  *Id.* § 161.205(a).  A frivolous complaint is defined as "a complaint that is groundless and brought in bad faith or is groundless and brought for the purposes of harassment."  *Id.*  Starr seeks a declaratory judgment finding that the contested laws are unconstitutional.  Compl. ¶ 1.  Both the County and Abbott have filed motions to dismiss Starr's Complaint.  *See generally* County's Mot.; Abbott's Mot.

**II.  DISCUSSION**

    **A.  Standard**

"Federal courts are courts of limited jurisdiction."  *Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004).  Article III of the

---

[1]     Starr does not specifically identify the County ordinances he challenges in his Complaint.

United States Constitution vests federal courts with the power to hear "cases" or "controversies"; however, "it does not attempt to define those terms." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992) (citing U.S. CONST. art. III, § 1, cl. 1). In order to effectuate the Constitution's mandate, the Supreme Court has developed the doctrine of standing. *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004). "The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The "irreducible constitutional minimum of standing" contains the following three elements: 1) an injury in fact; 2) a causal connection between the injury and the conduct of which the plaintiff complains; and 3) redressability. *Lujan*, 504 U.S. at 560-61. To wit, "a litigant must demonstrate that [he or she] has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (citing *Lujan*, 504 U.S. at 560-61).

Similar to the doctrine of standing is the doctrine of ripeness. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149-54 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)); *Texas v. United States*, 497 F.3d 491, 496 (5th Cir. 2007) ( "[T]he doctrines often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury."). Like standing, "ripeness is a constitutional prerequisite to the exercise of jurisdiction." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). The fundamental premise behind the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements," when those disagreements are premised on "contingent future events that may not occur as anticipated, or indeed may not occur at all."

3

*Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 72 (1993) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). Whether a controversy is "ripe" for judicial resolution has a "twofold aspect, requiring [a court] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 814 (2003) (quoting *Abbott Labs.*, 387 U.S. at 148-49).

The party invoking federal jurisdiction bears the burden of establishing the elements of both standing and ripeness. *See Renne v. Geary*, 501 U.S. 312, 316 (1991) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.") (internal quotations omitted); *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004); *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *Warth*, 422 U.S. at 508. A defendant may challenge standing and ripeness on a Rule 12(b)(1) motion, arguing that the lack of either divests the court of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) is properly granted when the court "lacks the statutory or constitutional power to adjudicate the case." *Homebuilders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). In ruling on a 12(b)(1) motion, a court may rely upon: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, or (3) the complaint supplemented by undisputed facts in addition to the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

**B.     Analysis**

Abbott claims that the instant suit against him is barred by sovereign immunity. Abbott's

Mot. 2-4. In addition, both the County and Abbott allege that Starr's Complaint should be dismissed because the Court lacks proper subject matter jurisdiction over Starr's claims. *See* County's Mot. ¶ 8; Abbott's Mot. 4-7. The Court will first evaluate whether Starr's complaint against Abbott is barred by sovereign immunity and then determine whether it has proper subject matter jurisdiction over the instant suit. *See Severance v. Patterson*, 566 F.3d 490, 495 (5th Cir. 2009) (addressing defense of sovereign immunity before evaluating whether plaintiff had proper standing to bring claims).

### 1. Sovereign Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. This limit on jurisdiction also extends to suits brought against a state by its own citizens. *See, e.g., Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004); *Hans v. Louisiana*, 134 U.S. 1 (1890). Accordingly, federal courts do not have jurisdiction over cases where a state is made party to a suit without its consent. *See Alden v. Maine*, 527 U.S. 706, 745-46 (1999). A suit brought against a state official acting in his or her official capacity is akin to a suit against the state.[2] *See, e.g., Hafer v. Melo*, 502 U.S. 21, 25 (1991). Therefore, generally, a plaintiff cannot avoid the Eleventh Amendment's proscription by naming a state officer as a party in lieu of the state. *See Okpalobi v. Foster*, 244 F.3d 405, 411 (5th Cir. 2001).

However, *Ex parte Young* provides an exception to the Eleventh Amendment's prohibition and allows suits against state officials to proceed where the complainant seeks to

---

[2] State officials acting in their individual capacities are not granted Eleventh Amendment immunity. *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

enjoin the enforcement of an unconstitutional statute. 209 U.S. 123, 157 (1908); *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992)). This exception is permitted because "a state official enforcing an unconstitutional statute is not acting for the sovereign state and therefore is not protected by the Eleventh Amendment." *Okpalobi*, 244 F.3d at 411 (citing *Ex parte Young*, 209 U.S. at 157). "The essential ingredients of the *Ex parte Young* doctrine are that a suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Saltz*, 976 F.2d at 968.[3]

In the case before the Court, Abbott concedes that *Ex parte Young* provides a limited exception to sovereign immunity and allows a prospective constitutional challenge to bar the

---

[3] There appears to be some uncertainty with regard to whether the exception carved out in *Ex parte Young* applies to state officers sued in their official capacities or in their individual capacities. *See Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 648 (2002) ("[T]he doctrine of *Ex parte Young* permits [plaintiff's] suit to go forward against the state commissioners *in their official capacities*.") (emphasis added); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (acknowledging the exception carved out by *Ex parte Young* for "certain suits seeking declaratory and injunctive relief against state officers *in their individual capacities*") (emphasis added); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008) ("*Ex Parte Young* subjects a state employee acting *in her official capacity* to suits for prospective relief that avoid the Eleventh Amendment bar.") (emphasis added); *Melder v. Allstate Corp.*, 404 F.3d 328, 337 n.6 (5th Cir. 2005) (acknowledging the *Ex parte Young* exception for "suits for declaratory and injunctive relief against state officials *in their individual capacities*") (emphasis added). Indeed, in the very same paragraph where the Fifth Circuit in *Saltz* states that "[t]he essential ingredients of the *Ex parte Young* doctrine are that a suit must be brought against individual persons *in their official capacities* as agents of the state," it goes on to state that "the requirement for suing state officials *in their individual capacities* is an essential element of the *Ex parte Young* doctrine." *Saltz*, 976 F.2d at 968 (emphasis added). However, as Starr does not specify whether he brings this suit against Abbott in the latter's individual or official capacity, yet he argues that the *Ex parte Young* exception applies to his claim, the Court will assume that he brings this suit against Abbott in whichever capacity allows for the exception. *See Brandon v. Holt*, 469 U.S. 464, 469 (1985) (inferring the character of the suit from the course of the proceedings); *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 485 n.12 (5th Cir. 2000). For purposes of this order, the Court will assume that the exception applies to suits brought against state officials in their official capacities. *See* Abbott's Mot. 3 ("A narrow exception to sovereign immunity exists where a plaintiff seek prospective injunctive relief against an individual in their [sic] official capacity.").

enforcement of a statute by a state official acting in his or her official capacity.  *See* Abbott's Mot. 3; *see also Ex parte Young*, 209 U.S. at 159-60.  However, Abbott alleges that the *Ex parte Young* exception is not available in the instant case because Abbott lacks the requisite ability and willingness to enforce the challenged statute as required by the Fifth Circuit.  Abbott's Mot. 3; *see also Okpalobi*, 244 F.3d at 419 (requiring "sufficient indicia of the defendant's enforcement powers" to qualify for the *Ex parte Young* exception).  Starr, on the other hand, asserts that the *Ex parte Young* exception applies to his claims because he seeks prospective relief from an unconstitutional statute.  *See* Pl.'s Resp. and Mot. to Deny Texas Att'y General's Mot. to Dismiss 1 ("Pl.'s Resp. to Abbott's Mot.") (Doc. No. 38).

   Starr is correct that the *Ex parte Young* exception may be available to a plaintiff challenging the constitutionality of a statute by seeking prospective injunctive or declaratory relief.  Pl.'s Resp. to Abbott's Mot. 1; *see also Aguilar*, 160 F.3d at 1054.  Starr cites the Supreme Court's opinion in *Verizon Maryland, Inc. v. Public Service Commission of Maryland* for the assertion that, in determining whether the *Ex parte Young* exception applies, a court need only conduct "a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  Pl.'s Resp. to Abbott's Mot. 2 (citing 535 U.S. 635, 645 (2002)).  However, in order to meet the requirement that the violation of federal law be ongoing, a court must be satisfied that the state officer being sued has threatened to enforce the challenged law, even if the threat is not yet imminent.  *See Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001) (citing *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338-41 (11th Cir. 1999)); *see also McBurney v. Cuccinelli*, --- F.3d ----, 2010 WL 2902787, at *3 (4th Cir. 2010) ("The *Ex parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws

of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act.'") (quoting *Ex parte Young*, 209 U.S. at 155-56).

In *Verizon*, it was undisputed that the defendant had the power to enforce the challenged order. *See* 535 U.S. at 642 n.2. In the instant case, however, Abbott's enforcement power is disputed. *See* Pl.'s Resp. to Abbott's Mot. 2; Abbott's Mot. 1. Accordingly, the Court must determine whether Abbott has the requisite connection with the enforcement of the challenged statutes. The Fifth Circuit requires "any probe into the existence of a[n *Ex parte*] *Young* exception [to] gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute." *Okpalobi*, 244 F.3d at 417.

First, the Court must determine whether Abbott has "some connection with the enforcement of the act." *See id.* at 412 (quoting *Ex parte Young*, 209 U.S. at 157). This connection may be found either in the challenged statute itself or the general laws of the state. *Id.* at 419. Neither section 161.173 nor section 161.205 explicitly state that the Attorney General is responsible for enforcing the challenged statute. Section 161.205 provides that civil penalties for filing a frivolous or bad-faith complaint are assessed by the County Ethics Commission. *See* TEX. LOC. GOV'T CODE §§ 161.205(a)-(b). Although section 161.173 makes the distribution of confidential materials a misdemeanor subject to up to six (6) months of imprisonment, it does not task the Attorney General with imposing any of the stated penalties. *See id.* §§ 161.173(h)-(m). Instead, the County, though the County Ethics Commission, is specifically charged with enforcing provisions of the ethics code "by issuing appropriate orders or recommendations or by

imposing appropriate penalties." *Id.* § 161.101(f).[4]

Nor is Abbott responsible for enforcing the statute under the general laws of the state. *See Okpalobi*, 244 F.3d at 419. Starr asserts that Abbott is responsible for enforcing statutes that mandate jail sentences. Pl.'s Resp. to Abbott's Mot. 2. However, Abbott is not charged with the duty or, apparently, the discretion to enforce the criminal penalties embodied in the statute. While the Attorney General may offer assistance in certain criminal cases, *see* TEX. CODE CRIM. PROC. art. 2.021; TEX. CONST. art. IV, § 22, county and district attorneys are granted the authority to prosecute criminal matters. *See* TEX. CODE CRIM. PROC. art. 2.01-2.02.[5] Further, even if the Attorney General had a general duty to enforce and uphold the laws of the state, such a general duty is an insufficient connection to support an exception to sovereign immunity under *Ex parte Young*. *See Okpalobi*, 244 F.3d at 319; *see also McBurney*, 2010 WL 2902787, at *3 (The requirement of "proximity to and responsibility for the challenged state action is not met when an official merely possesses general authority to enforce the laws of the state.") (internal citations and quotation marks omitted). The Attorney General is not tasked with the enforcement of sections 161.173 or 161.205 by the challenged statute or by the general laws of Texas, and Abbott lacks the enforcement connection required by the first prong of the Fifth Circuit's *Okpalobi* test.

---

[4] Neither party directs the Court to section 161.101(f) of the Texas Local Government Code; however, because Starr directs the Court to a final copy of the Senate Bill, enacted by the state legislature, *see* Compl. ¶ 6 (citing http://epcounty.com/ca/documents/SB1368Final.pdf), the Court may consider any portion of the bill when ruling on Defendants' respective motions to dismiss. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009) (allowing courts to consider "documents incorporated into the complaint by reference" when evaluating the merits of a motion to dismiss) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

[5] The Court takes judicial notice of Texas state law. *See Tellabs, Inc.*, 551 U.S. at 322 (stating that, when ruling on a motion to dismiss, a district court may consider "matters of which a court may take judicial notice"); *McGill v. Gadsden Cnty. Comm'n*, 535 F.2d 277, 279 (5th Cir. 1976) (taking judicial notice of state law).

The second prong of the *Okpalobi* test requires an examination of the state official's willingness to enforce the statute. *Okpalobi*, 244 F.3d at 417. Abbott does not meet the willingness requirement because, even if he were able to enforce the challenged statute, he has shown no interest in doing so.[6] *See* Abbott's Mot. 2-4 ("[T]he Texas Attorney General has not enforced or threatened to enforce the statute."). Unlike the attorney general in *Ex parte Young*, who brought a mandamus action to compel compliance with a state statute, *see Okpalobi*, 244 F.3d at 414, Abbott has not taken any action to enforce the challenged statute. Abbott's Mot. 1. Starr asserts that *Ex parte Young* "emphasizes the need for a federal court to address federal constitutional questions in a preenforcement [sic] challenge." *See* Pl.'s Resp. to Abbott's Mot. 2 (citing *Idaho v. Coeur D'Alene Tribe of Idaho*, 521 U.S. 261, 293 (1997) (O'Connor, J., concurring)). However, such need does not allow the Court to ignore *Ex parte Young*'s enforcement connection requirement. To allow this suit against Abbott would violate the principles underlying the Eleventh Amendment. As the Court noted in *Ex parte Young*, if suits against the attorney general were allowed because he

> might represent the State in litigation involving the enforcement of its statutes . . . [such suits] would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the States of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.

*Ex parte Young*, 209 U.S. at 157.

---

[6] Starr cites a district court case from the Southern District of Ohio for the proposition that enforcement commences upon the enactment of a statute with a coercive effect. *See* Pl.'s Resp. to Abbott's Mot. 2 (citing *Allied Artists Pictures Corp. v. Rhodes*, 473 F. Supp. 560, 571 (S.D. Ohio 1979)). However, the statute in *Rhodes* contained self-enforcing provisions. *See Rhodes*, 473 F. Supp. at 571. The challenged statutes in the instant case are not self-enforcing and require action by the County Ethics Commission. *See* TEX. LOC. GOV'T CODE §§ 161.205(a)-(b), 161.173(h)-(m). Accordingly, enforcement of the statutes did not commence upon enactment and an analysis of the enforcement provisions under the *Okpalobi* test is necessary.

Accordingly, Abbott's motion to dismiss the instant suit against him as barred by sovereign immunity is **GRANTED**.[7]

### 2. Ripeness

Next, the Court examines whether Starr's complaint against the County is ripe for adjudication. Although neither the County nor Abbott has specifically raised the issue of ripeness, the Court addresses the issue sua sponte. *See Liberty Mut. Ins. Co. v. Brown*, 380 F.3d 793, 794 (5th Cir. 2004); *Johnson v. Sikes*, 730 F.2d 644, 647 (11th Cir. 1984) ("The question of ripeness affects our subject matter jurisdiction . . . and may be raised sua sponte at any time."); *see also Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) ("A suit for declaratory relief, while allowing a party to anticipate a suit and seek a judicial resolution, must nevertheless" be ripe for

---

[7] Starr complains of a "curious looping in this case," whereby the County argues that the State of Texas is as a necessary party to the suit and Abbott argues that he lacks the requisite enforcement powers to defeat sovereign immunity. Pl.'s Resp. to Abbott's Mot. 2. Were the instant case ripe for adjudication, the Court's dismissal of Starr's claims against Abbott would not necessarily prove fatal to his case, as it is unclear that Abbott is a necessary party to this action. *See Dickerson v. Bailey*, 87 F. Supp. 2d 691, 693 (S.D. Tex. 2000) ("The Court is aware that when the constitutionality of a state statute is challenged in Texas, the attorney general must be given notice of the suit, though he need not actually be sued as a party."); Abbott's Mot. 4 n.2 (noting that "the Texas Attorney General is not required to be a named party when the constitutionality of a state statute is challenged").

Starr must give notice to the Attorney General, pursuant to Rule 5.1. *See* FED. R. CIV. P. 5.1; *Baker v. Wade*, 743 F.2d 236, 242 (5th Cir. 1984) ("In declaratory judgment actions challenging the constitutionality of a statute or ordinance, "the Attorney General of the State shall also be served with a copy of the proceeding and be entitled to be heard."), *rev'd on other grounds*, 769 F.2d 289 (5th Cir. 1985)); *see also Moore v. Morales*, 63 F.3d 358, 360-61 (5th Cir. 1995) ("[T]he State of Texas requires that, when the constitutionality of one of its laws is challenged, 'the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.'"). However, by naming Abbott as a defendant in his amended complaint, Starr has satisfied the notice requirement. *See* Compl.; *see also Holland v. City of Dallas*, No. 3:06-CV-1728-G, 2007 WL 1975590, at *1 (N.D. Tex. Jul. 5, 2007) (implying that, by naming the state attorney general as a defendant, the plaintiff provided sufficient notice of the proceedings). Thus, the Court's grant of Abbott's Motion does not mandate that the complaint against the County be dismissed for failure to join, as the County has failed to meet its burden of showing that Abbott is a necessary party in this suit. *See Hood ex rel. Miss. v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009) ("[T]he party advocating joinder has the initial burden of demonstrating that a missing party is necessary . . . ."); *see also* FED. R. CIV. P. 19(b) (giving federal courts discretion to proceed absent joinder of a necessary party).

adjudication). As discussed above, to determine whether Starr's complaint is ripe, the Court must evaluate both the fitness of the issues for judicial decision and any hardship to the parties that would result should the Court dismiss the suit for lack of subject matter jurisdiction. *See Nat'l Park Hospitality Ass'n*, 538 U.S. at 814.

### a. Fitness of the issues

Starr alleges that his First Amendment rights have been chilled by the penalties set forth in sections 161.173 and 161.205 of the Texas Local Government Code and the related County ordinances. Compl. ¶¶ 6-9. The sections of the code contemplate imposing penalties in the form of civil fines and/or incarceration of up to six (6) months upon individuals who file frivolous or bad-faith complaints or who disseminate confidential materials. *See* TEX. LOC. GOV'T CODE §§ 161.173, 161.205. In addition, the code contemplates giving private parties the right to file civil suits against offending individuals. *Id.* ¶¶ 8-9 (citing TEX. LOC. GOV'T CODE §§ 161.173, 161.205). The penalties alleged are sufficient to allow Starr to bring the instant suit, provided that they are neither premature nor speculative in nature. *See LeClerc v. Webb*, 419 F.3d 405, 413-14 (5th Cir. 2005) ("The ripeness doctrine counsels against "premature" adjudication by distinguishing matters that are 'hypothetical' or 'speculative' from those that are poised for judicial review."); *Shields*, 289 F.3d at 835 ("The threat of litigation can establish a justiciable controversy if it is specific and concrete."). "Even actions for declaratory relief, which by design permit pre-enforcement review, require the presence of an actual 'case' or 'controversy.'" *LeClerc*, 419 F.3d at 414.

In the instant case, the statutes of which Starr complains are simply enabling statutes that authorize the County to establish an ethics board with the power to penalize those who violate the County's ethics standards. *See* TEX. LOC. GOV'T CODE §§ 161.101(b) (authorizing the

County to appoint an ethics commission to "adopt or use as a guide any ethics law or rule of the United States, this state, or a political subdivision in this state to the extent that the law or rule promotes the purposes of this chapter and serves the needs of the county"), 161.101(f) (requiring "the commission to enforce the provisions of [its adopted] ethics code by issuing appropriate orders or recommendations or by imposing appropriate penalties"); *see also* Comm. Report, Bill Analysis (Mar. 25, 2009), *available at* http://www.legis.state.tx.us/tlodocs/81R/analysis/html/SB01368S.htm (last viewed Aug. 4, 2010) (noting that "[r]ulemaking authority is expressly granted to the county ethics commission in SECTION 1 (Sections 161.101 and 161.166, Local Government Code) of this bill."); *see also Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 227 (1959) (permitting federal courts to take judicial notice of the legislative history of a bill).  Indeed, in discussing the bill, the County states that the bill "does not create an ethics code or set out standards" and that, if it were enacted, "the county [would] create its own ethics code, including who is or is not covered, what areas are or are not covered (elections, procurement, employment, etc.) and what the penalties are." *See* A Summary of House Bill 2301, *available at* http://www.co.el-paso.tx.us/CS/blogs/ca_press/Exhibit%20A-%20Summary%20Ethics%20Legislation%20HB2301.pdf (last visited Aug. 4, 2010); *see also* Senate Bill 1369 Legislative History, *available at* http://www.legis.state.tx.us/billlookup/History.aspx?LegSess=81R&Bill=SB1368 (last visited Aug. 4, 2010) (listing House Bill 2301 as the companion to Senate Bill 1368).

Although Starr alleges that the County has enacted and/or adopted ordinances which effectuate the state-authorized penalties, the County states that its "only action has been to create an Ethics Commission, which shall, at its own pace, adopt a new Code of Ethics." County's Mot. ¶ 3 n.2.  The County claims that the process of drafting and adopting a new Code of Ethics

13

"is underway, but far from complete." *Id.* Indeed, the County's website confirms that a new Code of Ethics has not yet been adopted. *See* http://www.epcounty.com/ethicscom/default.asp? (last visited Aug. 4, 2010) (inviting County residents to assist in the drafting of the new Ethics Code). The County further alleges that its current Code of Ethics "does not contain any of the provisions of which Plaintiff complains." *Id.* ¶ 3.

Although the County Ethics Commission is empowered with the authority to penalize individuals who file frivolous complaints or disseminate confidential materials, the facts indicate that no such rules are yet in effect. As the alleged County ordinances do not appear to have been adopted or enacted, and the existing state code, which is merely enabling legislation, cannot function to penalize Starr should he file an ethics complaint, any alleged penalties Starr would face appear to be only speculative. As such, Starr has failed to meet his burden of showing that his claim gives rise to a sufficiently ripe controversy.

### b.     Hardship to parties

In addition to evaluating the fitness of the issues, the Court must consider any hardships that may befall the parties should the Court find that the instant case is not ripe for adjudication. *See Nat'l Park Hospitality Ass'n*, 538 U.S. at 814. Because the County has not yet established a system whereby parties may be penalized for filing complaints deemed to be frivolous or filed in bad faith, or for those individuals who disseminate confidential materials, Starr has failed to show that he will suffer any hardship should his case be dismissed. *See Texas*, 497 F.3d at 498 ("[E]ven where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness.") (quoting *Cent. & Sw. Servs. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000)). Furthermore, should the County subsequently implement the policies of which Starr complains, he is free to pursue a claim against the County at that time.

### III. CONCLUSION

For the foregoing reasons, Abbott's Motion to Dismiss (Doc. No. 34) and the County's Motion to Dismiss (Doc. No. 27) are hereby **GRANTED.**

The Clerk shall close the case.

**SO ORDERED.**

**SIGNED** on this 5th day of August 2010.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE